IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
FEBRUARY 14, 2007 Session

## RONALD F. FLEMING v. JIM MURPHY, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-004221-04     D'Army Bailey, Judge**

---

**No. W2006-00701-COA-R3-CV - Filed July 19, 2007**

---

The plaintiff buyer, a Texas resident, became aware of a used car for sale in Memphis through an internet advertisement. The plaintiff contacted the defendant who had prepared the internet advertisement for the seller, and who provided him with the phone number of the defendant seller. The plaintiff and the defendant seller agreed that the plaintiff would travel to the seller's house in Memphis to see the car and decide whether to purchase it for $38,000. The plaintiff and his stepson drove to the seller's home in Memphis, inspected the car, and took it on a short test-drive. The plaintiff noted several problems with the car during the test-drive, but declined the defendant seller's offer to have the car inspected by a Memphis area mechanic prior to purchase. The plaintiff tendered full payment for the car, and he and the seller signed a bill of sale that contained "as is" disclaimers of warranty. After the plaintiff arrived back home in Texas, he took the car to a mechanic for routine maintenance. The mechanic informed the plaintiff that the car's frame was severely rusted, rendering it dangerous to drive. The plaintiff received the same opinion from a restoration specialist, and the plaintiff claims ultimately to have spent nearly $35,000 restoring the vehicle. The plaintiff filed a complaint in Shelby County Circuit Court, asserting claims under the Tennessee Consumer Protection Act and claims for negligent misrepresentation and breach of contract. The plaintiff claimed actual damages which included over $25,500 in restoring the car to the condition represented by the defendants, and he sought treble damages under the Tennessee Consumer Protection Act. After discovery, the trial court granted the defendants' joint motion for summary judgment. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Felix H. Bean, III, Memphis, TN, for Appellant

Garrett M. Estep, Memphis, TN, for Appellees

**OPINION**

**I. FACTS AND PROCEDURAL HISTORY**

This case involves the sale of a used automobile. Plaintiff-buyer Ronald Fleming ("Appellant") is a Texas resident who is employed as a truck driver, and who has purchased approximately 15 used cars in his lifetime from various dealers and individuals. Defendants Jim Murphy and Jim Brannon are residents of Shelby County, Tennessee, as is Defendant Danny Buggs, who conducts business as a used car dealer under the company name of "Buggs Buggys" (collectively, "Appellees"). Mr. Murphy is a licensed used car dealer and purported independent contractor of Buggs Buggys, and Mr. Brannon prepared an advertisement for display on the online auction website, "eBay," to assist Murphy in selling the vehicle at issue.

In February of 2004, Mr. Fleming learned of the sale of a 1964 Chevrolet Corvette convertible from an advertisement on eBay. The advertisement stated that the car had once been owned by the actor John Travolta, and the Corvette was described as follows:

> This vehicle has been lovingly passed down, and still has plenty of life left in it. The previous owner has represented the mileage to be correct. Clean smell throughout, appears to have never been smoked in. This vehicle shines like new; it appears to have always been garaged. This vehicle has a smooth shifting transmission. The engine runs like a dream. There are no electrical concerns associated with this vehicle. This vehicle is perfectly sound, no known defects.
>
> This vehicle appears to have been detailed on a regular basis and looks brand new. The interior is extra clean; it was very well kept. There appears to be a full set of brand new tires. The engine in the car is a 1967 327-350HP that runs very well. In the pictures I have a window sticker that was made up just for display purposes and not original to the car. Any questions call me at . . . or email me at . . . . Thanks, Jim Brannon.

Also displayed on the advertisement was a prominent disclaimer stating "AS IS - NO WARRANTY," and "[i]t is the responsibility of the buyer to have thoroughly inspected the vehicle, and to have satisfied himself or herself as to the condition and value and to bid based upon that judgment solely." An additional description provided:

> This car is in very nice condition. The paint is very good and the body nice. The interior is in great shape and the carpet shows little wear. The engine runs great and the transmission shifts good. The brakes are new and the rear end has been rebuilt and serviced Nov. 03. You could drive this car and enjoy it without fear of breaking

down. The air conditioning works very well and will keep you cool
on hot days.

Fleming stated at his deposition that he was a fan of the films of John Travolta, and admitted that he would not have been interested in purchasing the Corvette if it had not been for the "John Travolta link."[1]

On February 8, 2004, Mr. Fleming called the phone number listed in the advertisement to express his interest in purchasing the Corvette. Initially, Appellant spoke only with Jim Brannon, who informed him that the car was actually owned by Jim Murphy.[2] Mr. Brannon explained that he had prepared the online listing at the request of Mr. Murphy, whom Mr. Brannon described as "a friend, a good ole boy[,]" and that he was selling the car for Mr. Murphy. Appellant contends that at that time he inquired about rust on the vehicle, and that Mr. Brannon informed him that it was affected by "surface rust" and that "to his knowledge, the car was everything that was listed on the E-Bay ad." Later that day, Appellant participated in a conference call with Mr. Murphy and Mr. Brannon. Appellant states that only Mr. Murphy spoke to him during this call, and that the two men negotiated the price of the car. Mr. Fleming states that he did not discuss the condition of the car with Mr. Murphy at this time, and that Mr. Murphy insisted on a purchase price of $38,000 for the Corvette. Mr. Murphy agreed to suspend the eBay auction so that Mr. Fleming could drive from Dallas to Memphis to look at the car, and he required a $500 deposit that would be non-refundable if Mr. Fleming decided not to purchase the vehicle. Mr. Fleming and Mr. Murphy engaged in another phone conversation later that day during which the arrangement was confirmed.

The next morning, Mr. Fleming and his stepson arrived in Memphis at the home of Mr. Murphy to inspect the Corvette, which was kept in Murphy's garage with several other antique automobiles. At some point during the visit, Fleming gave Murphy the $500 deposit in cash.[3] Mr. Fleming and his stepson spent approximately 30 minutes examining the vehicle. During the inspection, Fleming claims to have discussed the condition of the car with Murphy, who allegedly stated that "[i]t was a sound car, shouldn't have any problems with it." Fleming and his stepson viewed the vehicle's exterior and the engine compartment, used mirrors provided by Murphy to view the frame, and crawled underneath the rear end of the car in order to get a better look. In his

---

[1] We note at the outset of this opinion that Mr. Fleming has not alleged any misrepresentations related to Mr. Travolta's previous ownership of the Corvette.

[2] Mr. Murphy stated in his affidavit that he personally purchased the car "as-is" on November 1, 2003, for $35,805. He claimed to have spent approximately $1,000 having the rear-end of the car rebuilt by Snell Automotive prior to listing it for sale.

[3] In his appellate brief, counsel for Appellant states that Fleming paid this deposit by check made payable to Jim Murphy. However, Fleming stated in his deposition that he paid this amount in cash. Furthermore, the exhibit cited by counsel for this fact is actually a receipt, dated February 10, 2004, for a cashier check in the amount of $500 for which Fleming is listed as payee. It is apparent that the receipt corresponds to a cashier check for $500 that the parties acknowledged Murphy sent to Fleming sometime after the transaction, because the deposit was intended to be refundable after Fleming's $38,000 check cleared.

deposition, Mr. Fleming testified that he did not see any problems that concerned him. Fleming and his stepson also took the automobile for a test drive in Murphy's residential neighborhood for about 15 minutes. Mr. Fleming said that he heard a noise in the vehicle's rear end, that the heater did not work, and that the radio blew a fuse. However, Appellant indicated at his deposition that these problems were of minor concern to him and did not abate his desire to buy the car.

Upon his return to Murphy's home, Murphy offered to let Fleming take the car to a local mechanic of his choice for a professional inspection, but Fleming declined this opportunity. Mr. Fleming then agreed to purchase the Corvette for $38,000, and he filled out a check for a pre-approved credit line in this amount. Mr. Murphy instructed Appellant to make his check payable to Buggs Buggys, which he did, and he gave Murphy the check. Mr. Fleming was given receipts allegedly documenting reconstruction work Murphy had performed on the rear end of the car in November of 2003. Fleming and his stepson then went to Buggs Buggys.[4] Fleming stated in his deposition that he had understood the Corvette to be from Murphy's own private collection, and that he was surprised that he had been asked to make the check out to Buggs Buggys and follow Murphy to the dealership. However, Appellant admitted that these concerns did not deter him from proceeding with the transaction, and he also stated that he perceived no defect affecting the vehicle's chain of title. When they arrived at Buggs Buggys, Murphy introduced Appellant to Danny Buggs, who owned the dealership, and his wife. Fleming claimed that Mr. Murphy retrieved the certificate of title while he and his stepson waited. Mr. Fleming was presented with a bill of sale, which was on Buggs Buggys letterhead, and which displayed the following disclaimer:

Disclaimer of Warranties
. . .
All warranties on this vehicle are the manufacturer's. The Seller[] hereby expressly disclaims all warranties, either expressed or implied, including any implied warranty of Merchantability or Fitness for a Particular purpose, and neither assumes nor authorizes any other person to assume for it any liability in connection with this sale. [T]his disclaimer in no way affects the terms of the manufacturer's warranty. The buyer shall not be entitled to recover from the selling dealer any consequential damages, damages to property, damages for loss of use, loss of time, loss of profit or income, or any other incidental damages. Any exceptions to the above disclaimer must be expressly provided by separate instrument in writing.
THE VEHICLE BEING SOLD UNDER THIS AGREEMENT IS BEING PURCHASED AND ACCEPTED BY THE PURCHASER "AS IS".

---

[4] In his discovery responses, Murphy claimed that he was a licensed car dealer and independent contractor for Buggs Buggys. He stated that they went to Buggs Buggys in order to obtain a "drive-out tag," and also to utilize their notary services. Fleming, in his deposition, testified that Murphy told him that the title was kept at the dealership.

Mr. Fleming signed and dated the bill of sale beneath this provision. Additionally, both Fleming and Murphy signed underneath another provision, which provided in part:

> ALL USED VEHICLES SOLD AS IS WITH NO EXPRESS OR IMPLIED WARRANTY OF ANY KIND OR DESCRIPTION EXCEPT WHEN STATED ABOVE IN WRITING OR IN THE CASE OF A USED VEHICLE WITH AN UNEXPIRED PORTION OF MANUFACTURER'S WARRANTY THEREON AND, IF ANY, SAID WARRANTY SHALL BE DETERMINED SOLELY BY THE TERMS OF SAID WARRANTY.
> I understand and agree that this instrument comprises the entire agreement pertaining to this purchase AND NO OTHER AGREEMENTS VERBAL OR OTHERWISE IS [sic] UNDERSTOOD BY ME OR SHALL BE RECOGNIZED.

Mr. Fleming and his stepson left Memphis later that afternoon to return to their home in Dallas, Texas, took turns driving the Corvette and their other vehicle, and stopped to spend the night in Little Rock, Arkansas. They arrived home on February 10, and Appellant testified that neither he nor his stepson experienced any problems with the Corvette on the trip back to Texas.

On February 11, Appellant took the Corvette to his mechanic in Dallas, Bud Langton, in order to have its fluids changed. After he placed the car on the service rack, Mr. Langton informed Appellant that the vehicle's "frame was completely rusted through, brake lines rusted, gas lines rusted, rear end rusted and showed [him] where it had all been painted to cover it up." Mr. Fleming drove the car back home, and he sent Danny Buggs a fax in which he demanded restitution. He also sent letters to Buggs, Murphy, and Brannon, two of which were returned to him unopened. Mr. Fleming claimed to have received a message on his cell phone sometime in March from Mr. Murphy, who allegedly stated that "they were not going to do anything about the situation." Appellant took the vehicle to a restoration specialist in Texas, Gary Hatfield, for a second opinion regarding the vehicle's condition. Mr. Hatfield similarly noted the rusted frame, parts, and undercarriage that had been painted black. Appellant testified that he ultimately paid Mr. Hatfield nearly $35,000 for the vehicle's total restoration, which was completed approximately nine months later.

Mr. Fleming filed a complaint against the three defendants in Shelby County Circuit Court on July 22, 2004, asserting claims that Appellees' violated the Tennessee Consumer Protection Act through either willful or negligent misrepresentations as to the vehicle's condition, as well as common law claims for negligent misrepresentation and breach of contract. Plaintiff claimed economic damages "in excess of $25,500.00" which he alleged to be "the cost of bringing the value of the vehicle up to the standard as represented by the Defendants[.]" Plaintiff sought to recover actual damages in this amount, in addition to payments made to his credit provider to finance the purchase, "insurance and travel expenses connected with restoration of the vehicle[,]" and treble damages under the Tennessee Consumer Protection Act. After the parties agreed to allow more time for a response, Appellees filed their answer on September 1, 2004, and they filed an amended answer

on December 10, 2004, by leave of the trial court. The parties exchanged numerous interrogatories and requests for production of documents. In a detailed scheduling order entered on July 22, 2005, the trial court recognized that all outstanding written discovery for the case was complete, required that all additional discovery be completed by January 15, 2006, and set a trial date for February 7, 2006.

Appellees filed a motion for summary judgment on January 6, 2006, which contained their statement of facts, the affidavit of Mr. Murphy, the deposition of Mr. Fleming, and several documents related to the purchase of the vehicle. Mr. Fleming filed a motion in response on January 30, which was accompanied by his own affidavit, as well as affidavits of his two experts, Mr. Langton and Mr. Hatfield. Mr. Langton's affidavit provided, in part:

> 6. To service the car I placed on the rack and lifted it. With the car on the lifted rack I observed that the frame on the car was rusted through.
> 7. I noticed that the undercarriage had been painted with black paint and the paint on the frame had an odor of fresh paint, was tacky and I noticed there was an overspray on one of the wheel wells.
> 8. Because of the condition of the frame this car was dangerous.

Mr. Hatfield's affidavit provided in relevant part:

> 6. On or before February 26, 2004 my customer Ronald F. Fleming had a 1964 Chevrolet convertible Corvette car towed to my shop for inspection and [sic] have work done.
> 7. It was clear to me that the frame of this car was rusted to such an extent as to make it dangerous. The frame that was on the car when sold to Ronald F. Fleming was replaced by me and my employees.
> 8. It was equally clear to me the undercarriage had been recently painted black, there was an odor of fresh paint, the paint was tacky and there was an overspray of black paint on one of the wheel wells.
> . . .
> 9. If the rear end of this car had been rebuilt and serviced in November of 2003 then it would have been clear to whoever did the work that the frame was severely rusted.

In the affidavit, Mr. Hatfield also stated that the description of the Corvette in the eBay advertisement constituted a misrepresentation of the vehicle's condition.

A summary judgment hearing was held before the Honorable D'Army Bailey on February 24, 2006. Appellees relied heavily on this Court's decision in *Pitz v. Woodruff*, No. M2003-01849-COA-R3-CV, 2004 Tenn. App. LEXIS 851 (Tenn. Ct. App. Dec. 17, 2004), an opinion that

discusses fraudulent misrepresentation, during their arguments in support of summary judgment. In announcing his ruling from the bench, the trial court stated in part:

> Judge Kirby's opinion says that, and again she's making it clear that, she says, quote, although the courts will enforce as-is clauses allocating the risk of unknown defects to the buyers, to do so where the sellers knew about the defect and withheld material information would be to blindly enforce a contract obtained by fraud. She goes on to say the defendant has a duty to disclose such a fact or condition, quote, unless ordinary diligence would have revealed the disclosed fact, unquote. Thus, there is no duty to disclose a material fact or condition if it was apparent through common observation or if it would have been discoverable through the exercise of ordinary diligence, unquote.
>
> It seems to me that Mr. Fleming, the plaintiff, buyer, failed to exercise ordinary diligence on the facts even taken in the light most favorable to the plaintiff and accordingly the motion for summary judgment will be granted.

On March 2, 2006, the trial court entered an order granting Appellees summary judgment. In the order, the trial court stated its findings as follows:

> Among other matters the Court considered the motion and memorandum filed on behalf of the defendants, including the affidavit of Jim Murphy, the response and memorandum opposing the motion filed on behalf of the plaintiff, including the affidavits of Ronald Fleming, Bud Langton, and Gary Hatfield, the transcript of Ronald Fleming's deposition, and the relevant bill of sale. Having considered the entire record in this cause, the applicable law, and the arguments of counsel, the Court finds that the plaintiff, Ronald Fleming, failed to exercise ordinary diligence. Viewing the facts in the light most favorable to the plaintiff, Ronald Fleming did not justifiably rely upon any representation made by any defendant. In the absence of any genuine issue of material fact, the Court finds that the summary judgment motion is well taken and should be granted .
> . . .

Mr. Fleming filed a timely notice of appeal.

## II. ISSUES PRESENTED

The sole issue presented by Mr. Fleming on appeal, restated for the purpose of clarity, is whether the trial court erred in granting summary judgment in favor of Appellees on his claims for

unfair or deceptive acts or practices under the Tennessee Consumer Protection Act, negligent misrepresentation, and breach of contract. We affirm.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04 (2006). Our review of the trial court's grant of summary judgment is *de novo* on the record before this Court, with no presumption of correctness. **Warren v. Estate of Kirk**, 954 S.W.2d 722, 723 (Tenn. 1997). No presumption of correctness attaches to a trial court's findings in a summary judgment case. **Burgess v. Harley**, 934 S.W.2d 58, 62 (citing **Carvell v. Bottoms**, 900 S.W.2d 23, 26 (Tenn. 1995)).

"The party moving for summary judgment must affirmatively negate an essential element of the nonmoving party's claim, or conclusively establish an affirmative defense. . . . When a party makes a properly supported motion for summary judgment, the burden shifts to the nonmoving party to establish the existence of disputed material facts." **Patterson v. Arif**, 173 S.W.3d 8, 11 (Tenn. Ct. App. 2005) (citing **McCarley v. West Quality Food Serv.**, 960 S.W.2d 585, 588 (Tenn. 1998)). In determining whether or not a genuine issue of material fact exists for purposes of summary judgment, courts in this state have indicated that the trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. **Byrd v. Hall**, 847 S.W.2d 208, 210-11 (Tenn. 1993). If there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the summary judgment motion must be denied. **Id.** at 211. The trial court is not to "weigh" the evidence when evaluating a motion for summary judgment. **Id.** The court is simply to overrule the motion where a genuine dispute exists as to any material fact. **Id.**

## IV. DISCUSSION

The Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. §§ 47-18-101 *et seq.*, creates a private right of action for "any person who suffers an ascertainable loss of money or property, real, personal or mixed . . . as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part." Tenn. Code Ann. § 47-18-109(a)(1). Although the TCPA does not define the phrase "unfair or deceptive act or practice," § 47-18-104(b) provides a list of specific examples. **Ingram v. Cendant Mobility Fin. Corp.**, 215 S.W.3d 367, 375 (Tenn. Ct. App. 2006); **Glanton v. Bob Parks Realty**, No. M2003-01144-COA-R3-CV, 2005 Tenn. App. LEXIS 263, at *14 (Tenn. Ct. App. Apr. 27, 2005). Disclaimers permitted by the Uniform Commercial Code may limit or modify liability otherwise imposed by the code, but such disclaimers do not defeat separate causes of action for unfair or deceptive acts or practices under the TCPA. **Morris v. Mack's Used Cars**, 824 S.W.2d 538, 539 (Tenn. 1992); *see also* **Godwin Aircraft, Inc. v. Houston**, 851 S.W.2d 816, 822 (Tenn. Ct. App. 1993) (noting the

Tennessee Supreme Court's holding that "disclaimers permitted by the Uniform Commercial Code do not constitute a defense under the Tennessee Consumer Protection Act").

Appellant alleged three unfair or deceptive acts or practices under the TCPA in his complaint. The first is provided at Tenn. Code Ann. § 47-18-104(b)(7): "Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another." Another provision relied upon by Fleming was § 47-18-104(b)(21), stating in part: "Using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the goods or services offered . . . ." Finally, Appellant relied upon the TCPA's "catch-all" provision located at § 47-18-104(b)(27): "Engaging in any other act or practice which is deceptive to the consumer or to any other person." Fleming based his TCPA claims upon alleged misrepresentations in the eBay advertisement, which was prepared by Defendant Jim Brannon. Although it was not pled in the complaint, Fleming later testified that upon his initial inquiry about the car, Brannon had represented that, to his knowledge, the Corvette was in the condition described in the advertisement, and that it was affected only by "surface rust." Mr. Fleming also stated that during his inspection of the vehicle, Mr. Murphy, the purported owner of the car, had described it as "sound" and one with which Fleming "shouldn't have any problems." Fleming asserted that these representations caused him to purchase the car, which his mechanic and restoration specialist in Texas later informed him was dangerous to drive because of its rusted frame. Fleming claimed that Defendants knew or should have known that their statements were false, and that they were liable under the TCPA for either knowingly or negligently engaging in unfair or deceptive acts or practices. Fleming also alleges that Defendants knew or should have known that the vehicle's undercarriage had been painted black, hindering his ability to discover its true condition.

The transcript of the hearing below indicates that the trial court's treatment of Plaintiff's claims focused primarily on the common law elements for fraudulent misrepresentation, as reiterated by this Court in *Pitz v. Woodruff*. As a threshold matter, we note that "the scope of the TCPA is much broader than that of common-law fraud." ***Tucker v. Sierra Builders***, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005). "Under the TCPA, a consumer can obtain recovery without having to meet the burden of proof that is required in common-law fraud cases, and the numerous defenses that are available to the defendant in a common-law fraud case are simply not available to the defendant in a TCPA case." ***Id.*** For example, this Court has held that in TCPA cases involving misrepresentation, a plaintiff is not required to show reliance upon a misrepresentation in order to maintain a cause of action. *See **Messer Griesheim Indus., Inc. d/b/a MG Indust. v. Cryotech of Kingsport, Inc.***, 131 S.W.3d 457, 469 (Tenn. Ct. App. 2003) (citing ***Harvey v. Ford Motor Credit Co.***, No. 03A01-9807-CV-00235, 1999 Tenn. App. LEXIS 448, at *4 (Tenn. Ct. App. July 13, 1999)). However, there must be an unfair or deceptive act or practice by the defendant before the defendant can be held liable under the TCPA. *See, e.g.,* Tenn. Code Ann. §§ 47-18-104(a) & -109(a)(1); ***McLean v. Bourget's Bike Works, Inc.***, No. M2003-01944-COA-R3-CV, 2005 Tenn. App. LEXIS 645, at *20 (Tenn. Ct. App. Oct. 7, 2005); ***New Life Corp. v. Thomas Nelson, Inc.***, 932 S.W.2d 921, 928 (Tenn. Ct. App. 1996).

Furthermore, although the TCPA does not require reliance, plaintiffs are required to show that the defendant's wrongful conduct proximately caused their injury. *White v. Early*, 211 S.W.3d 723, 741 (Tenn. Ct. App. 2006); *Prudential Botts & Assocs. Realtors, Inc. v. R & E Props.*, LLC, No. E2002-01827-COA-R3-CV, 2003 Tenn. App. LEXIS 454, at *4-5 (Tenn. Ct. App. June 25, 2003); *Milliken v. Crye-Leike Realtors*, No. M1999-00071-COA-R3-CV, 2001 Tenn. App. LEXIS 472, at *21-24 (July 5, 2001); *Harvey*, 1999 Tenn. App. LEXIS 448, at *4-5; *Stracener v. Swindle*, No. 01A01-9502-CH-00047, 1995 Tenn. App. LEXIS 471, at *6 (July 14, 1995). The TCPA provides a cause of action for "any person who suffers an ascertainable loss. . . *as a result of* the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part . . . ." *Land v. Dixon*, No. E2004-03019-COA-R3-CV, 2005 Tenn. App. LEXIS 401, at *12 (Tenn. Ct. App. July 12, 2005) (emphasis in original); *see also* Tenn. Code Ann. § 47-18-109(a)(1). "The phrase 'as a result of' requires a showing by a plaintiff that the alleged violations caused his or her injury." *Land*, 2005 Tenn. App. LEXIS 401, at *12. In *Ganzevoort v. Russell*, 949 S.W.2d 293, 298-99 (Tenn. 1997), the Tennessee Supreme Court cited a federal district court case, *Klotz v. Underwood*, 563 F. Supp. 335 (E.D. Tenn. 1982), *aff'd*, 709 F.2d 1504 (6th Cir. 1983), for the proposition that "the Tennessee Consumer Protection Act imposes no liability where the seller had no knowledge of the hidden defects and where an inspection by the purchaser would reveal the same information known by the seller." In *Land*, the Eastern Section of this Court concluded that the plaintiffs' TCPA claim was properly dismissed where they voluntarily elected to close on a contract for the sale of property with full knowledge of alleged misrepresentations and of the truth regarding the property, holding that the plaintiffs could not show "the required causative link between the misrepresentations and their alleged injury." 2005 Tenn. App. LEXIS 401, at *12.

A list of unfair or deceptive acts or practices within the province of the TCPA is provided at Tenn. Code Ann. § 47-18-104(b) (2007). The TCPA was thoroughly discussed by the Middle Section of this Court in *Tucker*, 180 S.W.3d at 114-20. Judge Koch, writing for the majority, discussed the historical background of the TCPA and other states' statutory counterparts, which were considered "little FTC acts" because of their similarity to the Federal Trade Commission ("FTC") Act outlawing unfair or deceptive trade practices, and stated in relevant part:

> The TCPA was not intended to be a codification of the common law. To the contrary, one of the express purposes of the TCPA is to provide additional, supplementary state law remedies to consumers victimized by unfair or deceptive business acts or practices that were committed in Tennessee in whole or in part. Tenn. Code Ann. §§ 47-18-102(2),(4) -112. Moreover, the TCPA is explicitly remedial, and Tennessee courts are therefore required to construe it liberally to protect consumers in Tennessee and elsewhere. Tenn. Code Ann. § 47-18-115; *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 925 (Tenn. 1998); *Morris v. Mack's Used Cars*, 824 S.W.2d 538, 540 (Tenn. 1992).

The scope of the TCPA is much broader than that of common-law fraud. (footnote omitted) Under the TCPA, a consumer can obtain recovery without having to meet the burden of proof that is required in common-law fraud cases, and the numerous defenses that are available to the defendant in a common-law fraud case are simply not available to the defendant in a TCPA case. *See Smith v. Baldwin*, 611 S.W.2d 611, 616, 24 Tex. Sup. Ct. J. 149 (Tex. 1980). Misrepresentations that would not be actionable as common-law fraud may nevertheless be actionable under the provisions of the little FTC acts, including the TCPA. *See, e.g., Stutman v. Chemical Bank*, 95 N.Y.2d 24, 731 N.E.2d 608, 611-12, 709 N.Y.S.2d 892 (N.Y. 2000); *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 724, 34 Tex. Sup. Ct. J. 463 (Tex. 1990). Claims under the TCPA are not limited to misrepresentations that are fraudulent or willful. *Smith v. Scott Lewis Chevrolet, Inc.*, 843 S.W.2d 9, 12-13 (Tenn. Ct. App. 1992). Instead, the TCPA applies to any act or practice that is unfair or deceptive to consumers. Tenn. Code Ann. §§ 47-18-104(a), -104(b)(27). (footnote omitted)

In order to recover under the TCPA, the plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an "ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated . . . ." Tenn. Code Ann. § 47-18-109(a)(1). (footnote omitted) The defendant's conduct need not be willful or even knowing, but if it is, the TCPA permits the trial court to award treble damages. Tenn. Code Ann. § 47-18-109(a)(3); *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 910 n.13 (Tenn. 1999); *Holmes v. Foster Pontiac GMC, Inc.*, 1989 Tenn. App. LEXIS 333, Shelby Law No. 9, 1989 WL 48515, at *4 (Tenn. Ct. App. May 10, 1989), *perm. app. denied*, (Tenn. Oct. 2, 1989); *Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297, 306 (Tenn. Ct. App. 1984).

*Id.* at 114-116.

The *Tucker* Court noted that "the concept of deceptiveness is a broader, more flexible standard of actionable merchant misconduct than the traditional remedy of common-law fraud" and went on to define a "deceptive" act or practice as "one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact." *Id.* at 116. In interpreting what constituted an "unfair" act or practice, the Court looked to the legislative history of the federal act, which indicated that "an act or practice should not be deemed unfair 'unless the act or practice causes or is likely to cause substantial injury to consumers which is not

-11-

reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.'" *Id.* at 116-17. The Court found that the concept of "unfairness" was even broader than "deceptiveness," and joined Connecticut, Maine, Maryland, Ohio, and Washington in using the definition of unfairness to guide its interpretation of the TCPA. *Id.* at 117; *see also* ***Ganzevoort***, 949 S.W.2d at 299 (noting the Supreme Court of Vermont's definition of "deceptive act or practice" as "a material representation, practice or omission likely to mislead a reasonable consumer").

In his response to Defendants' motion for summary judgment, Plaintiff stated: "Some of the things that were represented he could overlook but taken all together he was misled by the sellers and purchased a car that was not only not up to standards but one that was dangerous." Indeed, although Plaintiff's complaint alleged a litany of discovered problems with the vehicle, the record suggests that he was made aware of several defects through his own inspection prior to purchase and that he had been altogether unconcerned with them. For example, Fleming alleged that "[t]he engine in the car is not the same number as the Defendants advertised." Yet in his deposition, he testified that he "knew it wasn't a numbers-matching car when [he] bought the car" and that this did not matter to him because he liked the car. Plaintiff also asserted that the statement in the eBay advertisement, "[t]he air conditioning works very well," was a misrepresentation. His complaint alleged, "[t]he air conditioner is not cooling due to being installed improperly." Yet in his deposition, Fleming admitted that he never had any problems with the air conditioning, that he never used it before Mr. Hatfield had restored the vehicle, and that he did not know whether it worked or not at the time of purchase. As for the statement in the advertisement that "[t]here are no electrical concerns associated with this vehicle[,]" Mr. Fleming testified that when the fuse blew in the radio on his brief test-drive, the problem was of no real concern to him. He also testified that the dashboard later caught fire due to some electrical problem, but conceded that this problem occurred after he had the vehicle restored and that he did not associate the defect with Defendants. As the foregoing alleged mechanical problems are concerned, we find these facts to be similar to those in *Land*, 2005 Tenn. App. LEXIS 401, at *12, where the plaintiffs proceeded with their purchase of property despite their knowledge of alleged misrepresentations and the true condition of the property. We similarly conclude that in this case, Mr. Fleming failed to show the required causative link between these alleged misrepresentations and his injury.[5]

The defect of primary concern, allegedly unknown to Mr. Fleming at the time of purchase of the Corvette, was the severely rusted frame and various components of the vehicle. Both of Plaintiff's expert mechanics attested by affidavit that this condition made the vehicle dangerous to drive. The only alleged misrepresentation specifically referring to rust on the vehicle was Brannon's statement to Fleming, in the first telephone conversation on February 8, 2004, that the vehicle was

---

[5] Mr. Fleming also claimed that the rear end of the Corvette was not actually reconstructed in November of 2003, as represented by the advertisement and by Mr. Murphy at the time of sale. His only evidence for this claim is that the receipts or invoices Murphy provided him referred to an "'81 Corvette" rather than Fleming's 1964 model. In his affidavit, Murphy claimed that this was an invoice mistake, and that he spent over $1,000 having the vehicle's rear-end reconstructed by Snell Automotive. Fleming offered no evidence to refute this contention.

affected by "surface rust."[6] Mr. Fleming argues that this statement by Mr. Brannon was a misrepresentation about the vehicle's condition, considering his own mechanics' later discoveries. However, despite allegedly having been put on notice by Brannon of possible rust on the vehicle, Fleming could not identify any inquiries that he made in this regard to the seller, Murphy, in either of his subsequent conversations or upon his own inspection of the Corvette at Murphy's home in Memphis. Even more notably, despite being given the opportunity by Murphy to have the car inspected by a mechanic of his choosing, Appellant inexplicably declined this option. Mr. Fleming contends on appeal that he refused this opportunity because "he did not know where there was [a mechanic]" in Memphis.

In support of his claims under the TCPA, Mr. Fleming referenced several specific statements contained in the eBay advertisement, asserting that they constituted material representations about the vehicle's condition. As noted above, however, several of these statements referred to minor problems with the car that were known to Fleming after his own inspection and test drive, and they cannot be said to have caused Fleming's alleged injury. We perceive the following general statements in the eBay advertisement to serve as the basis for his TCPA claims regarding the vehicle's rusted frame: "This vehicle is perfectly sound, no known defects. . . This car is in very nice condition. . . You could drive this car and enjoy it without fear of breaking down."

As for any alleged TCPA violations for fraudulent misrepresentations regarding the vehicle's condition, whether represented in the eBay advertisement or orally by Jim Brannon or Jim Murphy, we conclude that the trial court appropriately granted summary judgment in favor of Appellees. Viewing the general representations made in the eBay advertisement in a light most favorable to Mr. Fleming, and assuming that either Brannon or Murphy knew them to be untrue, the undisputed facts of this case indicate that Appellant's injury, purchasing the severely rusted 1964 Corvette at issue, was reasonably avoidable by Mr. Fleming prior to purchase. "Even if an act or practice causes or is likely to cause substantial injury, it will not be considered unfair unless the injury is not reasonably avoidable by consumers themselves." *Tucker*, 180 S.W.3d at 117. For example, "[c]onsumers cannot reasonably avoid injury when a merchant's sales practices unreasonably create or take advantage of an obstacle to the free exercise of consumer decision-making." *Id.* While Brannon allegedly represented to Fleming that the vehicle was affected by "surface rust," Appellant admittedly knew that Brannon's role in the transaction was limited to preparing the eBay advertisement that initially sparked his interest in the car. Most importantly, Fleming refused to take advantage of Murphy's offer to have the car inspected by a mechanic in Memphis prior to purchase. The fact that Murphy offered Fleming this accommodation seriously undermines a contention that his sales practices unreasonably created or took advantage of an obstacle to the free exercise of Mr. Fleming's decision-making. *See id.* It is not alleged that Mr. Buggs, owner of Buggs Buggy's, made any representations as to the car's condition, or even spoke generally to Mr. Fleming about the car. Although this would not necessarily preclude his liability under the TCPA if Brannon and Murphy

---

[6] In his interrogatory responses, Defendant Brannon admitted to preparing the e-Bay advertisement, but claimed that in Fleming's initial phone call to him, the extent of his own involvement in the transaction was providing Fleming with Murphy's phone number.

could be said to have committed unfair or deceptive acts as his agents, we conclude that summary judgment was also correctly granted in his favor. As Mr. Fleming's injury was reasonably avoidable on these undisputed facts, we believe that no representations made by Defendants could be found to have been unfair or deceptive pursuant to the TCPA.

Appellant contends that the Defendants knew or should have known that the undercarriage of the Corvette had been painted black to conceal its true condition from him. However, his expert mechanic stated in his affidavit that he observed this fact after the car was placed on the rack at his shop. His other expert, a restoration specialist, attested that the rusted frame would have been noticeable by Snell Automotive in November of 2003 when it allegedly rebuilt the Corvette's rear end. Mr. Fleming testified at his deposition that Mr. Murphy "had mirrors on the side of the car underneath so you could see the frame" and that he and his stepson spent approximately 30 minutes visually inspecting the car in Murphy's garage. Although Fleming stated that it was raining outside, and the garage was equipped only with fluorescent lighting, he admitted that the lighting was sufficient for his purpose. When asked whether the mirrors were sufficient for Fleming to fully view underneath the car, given his knowledge at the time, he said no, and that he crawled underneath the car but was unable to see any better. Again, despite his alleged inability to properly inspect the car at this time, it is undisputed that Fleming declined Murphy's offer to have the car professionally inspected prior to purchase. On these facts, and even operating under the unlikely assumption that the car's black painted frame was the proximate cause of Mr. Fleming's injury, we believe that it was reasonable avoidable under these circumstances and that summary judgment was appropriate on this aspect of his claim under the TCPA.

To the extent that the summary judgment ruling on the TCPA claims was based upon a finding that Mr. Fleming had not reasonably relied upon any alleged misrepresentations by Appellees, we disagree with the trial court's treatment of this issue. A plaintiff proceeding under the TCPA is not required to show reliance upon a misrepresentation of the defendant in order to maintain a cause of action. *See Messer Griesheim Indus., Inc. d/b/a MG Indust.*, 131 S.W.3d at 469. However, this Court cannot reverse for matters which would not alter the outcome of the litigation. *See, e.g.*, *O'Brien v. Smith Bros. Engine Rebuilders, Inc.*, 494 S.W.2d 787 (Tenn. Ct. App. 1973). We therefore conclude that the trial court's summary judgment ruling is sustainable given the legal principles governing the TCPA, as discussed herein.

We recognize that an unfair or deceptive act does not have to be fraudulent or intentional to impose liability under the Act. *Brandon v. Winnett*, No. 01A01-9411-CH-00529, 1995 Tenn. App. LEXIS 508, at *16 (Tenn. Ct. App. July 28, 1995). In Appellant's complaint, he stated that "[i]n making the representations complained of in this complaint, the Defendants did so knowingly or they had reason to know the representations complained of were misrepresentations." **(R. Vol. 1, p. 3-4).** The complaint later provided, "[y]our Plaintiff reiterates all averments contained in the first twelve paragraphs of this Complaint and avers that the Defendants are guilty of negligence in representing the vehicle to be in the condition they described when the vehicle was not in that condition." Construing the pleadings liberally, Appellant's complaint averred a TCPA claim for negligent

-14-

misrepresentation.[7] Negligent misrepresentations which are unfair or deceptive to the consumer can also be deemed violations of the TCPA. *Id.* (citing ***Smith v. Scott Lewis Chevrolet, Inc.***, 843 S.W.2d 9, 13 (Tenn. Ct. App. 1992)). However, the undisputed facts on record have already led us to find that Appellant's injury was reasonably avoidable. This precludes Mr. Fleming, as a matter of law, from being able to show that Appellees engaged in unfair or deceptive acts or practices under the TCPA. *See **Tucker***, 180 S.W.3d at 117. It is apparent to this Court that summary judgment was also appropriately granted in Appellees' favor on Fleming's claim under the TCPA for any allegedly negligent misrepresentations made by Appellees.

We next consider Mr. Fleming's claim against Murphy, Brannon, and Buggs for breach of contract. Appellant's complaint failed to reference any written agreement between the parties as to the transaction in question, and apparently relied solely upon the aforementioned statements contained in the eBay® advertisement for the Corvette as a basis for this claim. At the summary judgment hearing, the trial court asked Appellant's counsel, Mr. Bean, to explain his position with regard to the "as is" language in the signed bill of sale, which the court recognized as the sole written embodiment of the parties' agreement. Mr. Bean responded that the "as-is" language appeared in the bill of sale, and "there was no written contract to enter into this sale or purchase as far as I know." Mr. Bean correctly cited ***Morris v. Mack's Used Cars***, 824 S.W.2d 538 (Tenn. 1992), for his position that "you cannot have an as-is provision under the UCC to prohibit the application of the Tennessee Consumer Protection Act." The trial court agreed that fraudulent misrepresentation would indeed be a defense to such a disclaimer under both the TCPA and the common law. The trial court recognized Defendants' argument that Plaintiff's claims of misrepresentation and breach of contract were weakened by the fact that the vehicle's condition would have been readily observable to Mr. Fleming before purchase if Fleming had accepted Murphy's offer to let him have the car inspected by a local mechanic. The trial court went on to apply the elements for fraudulent misrepresentation as recited in this Court's decision in ***Pitz***, 2004 Tenn. App. LEXIS 851, at *23, and concluded that Mr. Fleming did not exercise ordinary care or diligence in relying upon any alleged representations made by Defendants, or in declining the opportunity to have a professional inspection of the vehicle before he tendered payment.

The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract. ***Ingram v. Cendant Mobility Fin. Corp.***, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006). The interpretation of a written agreement is a matter of law and not of fact. *Id.* In *Ingram*, the plaintiffs pursued various claims based upon their purchase of a house, after they allegedly discovered that the house was not in the condition represented by the defendant seller. *Id.* at 369. In *Ingram*, this Court affirmed the trial court's grant of summary judgment on a claim for breach of contract, stating:

---

[7] Mr. Fleming briefly states in his appellate brief that his negligent misrepresentation claim was pursued under the common law. We address Appellant's position below, in our discussion regarding Fleming's common law claim for breach of contract.

The plaintiffs' theory necessarily requires the existence of some guarantee in the Sales Contract regarding the condition of the Residence at the time of the sale. The Sales Contract, however, contains an "as-is" clause . . . . The foregoing clauses are valid and enforceable in the absence of fraudulent misrepresentation and concealment. *Chadwick v. Spence*, 2004 Tenn. App. LEXIS 92, No. W2003-00931-COA-R3-CV, 2004 WL 298367, at *5 (Tenn. Ct. App. Feb. 11, 2004); *Edmondson v. Coates*, 1992 Tenn. App. LEXIS 466, No. 01-A-01-9109-CH-000324, 1992 WL 108717, at *11 (Tenn. Ct. App. May 22, 1992); *Simmons v. Evans*, 185 Tenn. 282, 206 S.W.2d 295, 296 (Tenn. 1947). [Defendant] Cendant has successfully negated the Plaintiffs' claims of fraudulent misrepresentation and concealment. Accordingly, the "as-is" clause is enforceable, and we affirm the Trial Court on this issue.

*Id.* at 374.

In this case, the bill of sale, which the trial court appropriately recognized to be the sole written agreement entered into between the parties, contained two separate disclaimers similar to the one found in *Ingram*. Specifically, Mr. Fleming and Mr. Murphy each signed the bill of sale which contained the following disclaimers:

Disclaimer of Warranties
. . .
All warranties on this vehicle are the manufacturer's. The Seller[] hereby expressly disclaims all warranties, either expressed or implied, including any implied warranty of Merchantability or Fitness for a Particular purpose, and neither assumes nor authorizes any other person to assume for it any liability in connection with this sale. [T]his disclaimer in no way affects the terms of the manufacturer's warranty. The buyer shall not be entitled to recover from the selling dealer any consequential damages, damages to property, damages for loss of use, loss of time, loss of profit or income, or any other incidental damages. Any exceptions to the above disclaimer must be expressly provided by separate instrument in writing.

THE VEHICLE BEING SOLD UNDER THIS AGREEMENT IS BEING PURCHASED AND ACCEPTED BY THE PURCHASER "AS IS".
. . .
ALL USED VEHICLES SOLD AS IS WITH NO EXPRESS OR IMPLIED WARRANTY OF ANY KIND OR DESCRIPTION EXCEPT WHEN STATED ABOVE IN WRITING OR IN THE CASE OF A USED VEHICLE WITH AN UNEXPIRED PORTION

-16-

OF MANUFACTURER'S WARRANTY THEREON AND, IF ANY, SAID WARRANTY SHALL BE DETERMINED SOLELY BY THE TERMS OF SAID WARRANTY.

I understand and agree that this instrument comprises the entire agreement pertaining to this purchase AND NO OTHER AGREEMENTS VERBAL OR OTHERWISE IS [sic] UNDERSTOOD BY ME OR SHALL BE RECOGNIZED.

Under the common law of contracts, we interpret exculpatory clauses according to the plain meaning of their terms. *Ouzts v. Womack*, 160 S.W.3d 883, 885 (Tenn. Ct. App. 2004), *perm. app. denied* (Tenn. Feb. 28, 2005). Disclaimers such as these are valid in Tennessee, absent fraudulent misrepresentation and concealment. *Ingram*, 215 S.W.3d at 374. Therefore it is necessary for this Court to discuss the elements for these causes of action under the common law.

Mr. Fleming contends that Appellees misrepresented the true condition of the vehicle in question. The well-established elements of a common law claim for fraudulent misrepresentation were recited by this Court in *Pitz*, 2004 Tenn. App. LEXIS 851, at *23:

> (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation related to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) the plaintiff reasonably relied on the misrepresented material facts; and (6) the plaintiff suffered damage as a result of the misrepresentation. *Metropolitan Gov't of Nashville [&] Davidson County v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992); *see Anderson v. Warren*, 2001 Tenn. App. LEXIS 958, W2000-02649-COA-R3-CV, 2001 WL 1683810, at *3 (Tenn. Ct. App. Dec. 12, 2001). In such an action, the burden is upon the plaintiff to show that his reliance on the defendant's representation was reasonable. *Metropolitan Gov't of Nashville & Davidson County*, 852 S.W.2d at 237.

Mr. Fleming also argues that Appellees fraudulently concealed the rusted condition of the car's frame by painting it black. "The tort of fraudulent concealment is committed when a party who has a duty to disclose a known fact or condition fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury." *Ingram*, 215 S.W.3d at 373 (quoting *Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 538-59 (Tenn. 1998)). "Moreover a plaintiff must show that the defendant had actual knowledge of the defect allegedly concealed." *Id.* (citing *Akbari v. Horn*, 641 S.W.2d 506, 507 (Tenn. Ct. App. 1982)). In this case, the only evidence offered by Mr. Fleming to support his contention that Appellees had actual knowledge that the Corvette had been painted black to conceal its rusted frame was the affidavit of his restoration specialist, Mr. Hatfield, who stated that "[i]f the rear end of the car had been rebuilt and serviced in

November of 2003 then it would have been clear to whoever did the work that the frame was severely rusted."

In *Pitz*, we elaborated as to several factors that should be considered when determining whether a plaintiff's reliance on a defendant's representations is reasonable: (1) the plaintiff's business expertise and sophistication; (2) the existence of a longstanding business or personal relationship between the parties; (3) the availability of the relevant information; (4) the existence of a fiduciary relationship; (5) the concealment of the fraud; (6) the opportunity to discover the fraud; (7) the party which initiated the transaction; and (8) the specificity of the misrepresentation. *Pitz*, 2004 Tenn. App. LEXIS 851, at *32 (citing *J.C. Bradford & Co. v. S. Realty Partners*, 2000 Tenn. App. LEXIS 555, W1999-01617-COA-R3-CV, 2000 WL 34411153, at *10 (Tenn. Ct. App. Aug. 14, 2000)).

In this case, the trial court applied these factors at the summary judgment hearing, after all discovery had been completed. In the final order granting summary judgment, Judge Bailey stated his finding that Mr. Fleming had not reasonably relied on any misrepresentations by Appellees. For the reasons already discussed, we agree with this finding by the trial court. As such, Appellees successfully negated Mr. Fleming's claims of fraudulent misrepresentation and concealment. Therefore, the exculpatory clauses found within the bill of sale were valid and enforceable, and Mr. Fleming's breach of contract claim fails as a matter of law, making summary judgment appropriate on this issue.

Mr. Fleming states in his appellate brief that his claims for negligent misrepresentation were pursued under the common law. However, Appellant fails to cite any Tennessee authority discussing the common law elements for negligent misrepresentation, or otherwise offer an argument in support of such a claim. Nonetheless, we note the Tennessee Supreme Court's discussion of the elements for negligent misrepresentation:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, *is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information*, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Robinson v. Olmer*, 952 S.W.2d 423, 427 (Tenn. 1997) (quoting Section 402B of the Restatement (Second) of Torts (1965)) (emphasis added). We have already expressed our agreement with the trial court's finding that Mr. Fleming did not reasonably rely on any alleged misrepresentations by Appellees, for reasons already thoroughly discussed. We additionally find that Mr. Fleming did not justifiably rely on any of these purported representations, thus any claim pursued for negligent misrepresentation under the common law was appropriately dismissed through the trial court's grant of summary judgment.

## V. Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed against Appellant, Ronald Fleming, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE